## BENJAMIN SPIRO *vs.* ABRAHAM NITKIN.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It is within the discretion of the trial court to permit a witness to be asked on cross-examination if he is not the person who had a lawsuit in that court with the party in whose behalf he now testifies.

A statement by defendant's counsel that one of the plaintiff's witnesses had been guilty of perjury in another case, will not ordinarily be regarded as sufficient ground for a new trial in a case tried to the court. Such unprofessional conduct usually furnishes a reason for action by the trial court rather than ground of appeal to this court.

At the close of the argument counsel for the prevailing party placed a written brief in the file and handed it to the judge, without submitting it to the opposing counsel or notifying him that it was to be filed, and before deciding the case this brief was read by the judge. *Held* that the course taken by counsel was such a departure from

Spiro *v.* Nitkin.

the usual and regular methods of procedure as to justify this court in granting a new trial, notwithstanding the trial judge stated that his decision was not influenced by the contents of the brief.

Submitted on briefs June 16th—decided August 1st, 1899.

ACTION by the indorsee against the maker of a promissory note to recover the amount thereof, brought to the District Court of Waterbury and tried to the court, *Cowell, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings and findings of the court. *Error and new trial granted.*

The defendant was the maker of the note in question. The payee was one Louis Spiro, who indorsed the note to his brother, the plaintiff, before its maturity.

The court found, as claimed by the defendant, that in the presence of certain other persons, who were witnesses on the trial, he paid $490 to said Louis Spiro upon the note, and afterwards paid the remainder of the note by check before the same was indorsed by the plaintiff. Such payment was denied by the payee.

The trial judge also found the following facts : The plaintiff, Benjamin Spiro, claimed to have paid his brother Louis the sum of $135 for the note, in five different payments, and that he was the good faith holder of the same ; but the evidence and all the facts sworn to, connected with the case, did not convince the trial judge that he was an innocent *bona fide* holder for value.

On the cross-examination of Louis Spiro, the plaintiff's witness, defendant's attorney asked him if he was the same person who had a lawsuit with his brother, the present plaintiff, in 1890, in this court. The plaintiff objected to this question as being immaterial and irrelevant. Defendant's counsel stated that the case referred to was tried before his honor, *Judge Cowell,* and that at that trial said Louis Spiro committed rank perjury, and that he was not entitled to belief in the present case. Plaintiff's counsel protested against this statement, and said it was not proper to attempt to influence the court in that way. The court admitted the question for the purpose of identification, without comment, the plaintiff

duly excepting. The witness answered that he did have a case with the present plaintiff in 1890.

On the argument of the case defendant's counsel stated to the court that the same Louis Spiro had committed perjury in the case alluded to as having been tried in 1890, and that the court should take judicial knowledge of that fact as not entitling him to credence in the present case. Plaintiff's counsel protested against this line of argument, but the defendant's counsel was allowed to proceed without rebuke or comment by the court.

When the arguments in said case were closed, October 5th, defendant's counsel placed in the file with the other papers and exhibits used in the trial and handed to the court, a written brief which he had prepared in the case, plaintiff's counsel making no objection, and the court making no ruling thereon. The court placed its copy on the file also, and did as a matter of fact read said brief prior to rendering its decision on October 8th, 1898. The court had formed its judgment in the case at the time said arguments were finished, and said brief had no influence whatever in causing a decision for the defendant.

*Albert P. Bradstreet* and *Charles G. Root*, for the appellant (plaintiff).

*John O'Neill*, for the appellee (defendant).

HALL, J. Upon the trial of an action the parties, as a general rule, are permitted to present only such evidence as will affect the questions which are within the issues framed. An exception to this rule is that which renders admissible certain evidence offered to impeach the credit of witnesses. By § 1098 of the General Statutes the interest of a witness in the event of a suit, or his conviction of a crime, though neither will disqualify him, may be shown for the purpose of affecting his credit. While direct evidence of the general reputation of witnesses for truthfulness may be offered in order to impugn their credit, and for the same purpose such

previous declarations or actions of a witness as are inconsistent with his testimony as to the matters in issue may be shown, neither party can offer evidence of particular instances of the untruthfulness of a witness out of court concerning immaterial matters, for the purpose of impeachment. Swift's Evidence, 143; *Foster* v. *Balmforth*, 44 Conn. 435, 436. Nor for that purpose can evidence be offered, even under our statute, to prove that upon the trial of another case concerning an independent subject a witness testified falsely. When evidence is offered to show that a witness is unworthy of credit because of his commission of a crime, the court will not enter upon a trial of the question of his guilt or innocence, but will limit the evidence to the proof of conviction of the offense. 1 Greenleaf's Evidence, § 461; *Hall* v. *Brown*, 30 Conn. 551.

Upon cross-examination a much wider range of inquiry as to collateral matters is permitted. It is a well settled rule, however, that witnesses cannot be cross-examined upon collateral matters for the mere purpose of afterwards contradicting them and so discrediting them. It is also true that upon cross-examination with the view of affecting the credit of a witness, counsel are almost universally permitted to ask as to particular and significant, but not too remote, events of his history, such as his present situation, where and with whom he has resided, his employment, his business relations, and his associates. Such inquiries are, in a measure, discretionary with the trial court, and that court may properly permit a cross-examination within reasonable limits as to other facts in the life of a witness showing such immoral or criminal conduct as prove him to be unreliable and unworthy of trust; the extent of such inquiries and the time to be consumed by them being largely a matter of discretion. 1 Greenleaf's Evidence, §§ 455–459; 1 Thompson on Trials, §§ 458–461; *Storm* v. *United States*, 94 U. S. 76; *Watson* v. *Twombly*, 60 N. H. 491. That a witness has been convicted of a crime must be proved by the higher evidence of the record, and not by cross-examination. 1 Greenleaf's Evidence, 457.

No claim is made that the witness Louis Spiro had been

convicted of the crime of perjury. No attempt was made to prove that he had testified falsely in the other case, and it does not appear of record that the court considered that he was discredited in the former case. It was not error to permit defendant's counsel to ask the question on cross-examination to identify the witness as the person who had been a party and a witness in a suit with his brother upon a former occasion before the same court which tried this case.

We do not regard the statement of defendant's counsel to the court, that the witness Louis Spiro committed "rank perjury" upon the trial of the former case, as sufficient ground for granting a new trial, especially as this case was not tried to the jury. While new trials are sometimes granted for permitting such remarks in the presence of the jury, transgressions of those rules of professional propriety which should govern attorneys during the trial of causes usually furnish reasons for action by the trial court, rather than grounds for an appeal to this court. *State* v. *Hamilton*, 55 Mo. 520, 522.

The finding shows that when the arguments in the case were closed, counsel for defendant placed in the file, with other papers and exhibits, and handed to the court, a written brief in which he discussed the question of the alleged perjury of Louis Spiro in the former case, and the questions relating to the plaintiff being a holder in due course of said note, and other questions material to the case, and that the court read this brief before deciding the case. The finding states that the plaintiff made no objection, but it does not appear that this brief was ever submitted to opposing counsel for examination, or that they were informed that it was proposed to file such a brief, or that permission of the court was asked to file it, or that counsel for plaintiff had, until after the decision of the cause, any knowledge of the matter, excepting that they may, without knowing its character, have seen the document placed in the files. In their brief in this court plaintiff's counsel insisted that the brief in question was not referred to in the oral argument in the trial court, and that it was submitted to that court without their knowledge. We find no denial of these claims in the brief of the defendant.

Spiro v. Nitkin.

It is an undoubted right of the parties to an action to be heard by argument upon fairly debatable questions of fact raised by evidence in the case. This right is subject to certain reasonable limitations by the court; but the parties are always entitled, before the decision of their case, to a fair opportunity for discussion by their counsel, of the questions so presented. Boone's Rev. of Weeks on Attorneys at Law, § 110, p. 240; *Douglass* v. *Hill*, 29 Kan. 527. To permit the counsel upon one side of a case to argue it in the absence of his opponent, and without his knowledge, or notice to him, and without giving him an opportunity to reply, would be such a denial of the right of a party to be heard in court, and such a departure from the usual and regular methods of procedure, as would warrant the granting of a new trial. As we interpret the finding before us, that was the practical effect of the filing by counsel, and the reading by the court, of the brief in question. Assuming that there was no intention to conceal the filing of this brief from plaintiff's counsel, and that the court in examining it supposed it had been filed with their consent, we think the proceeding was so irregular that a new trial ought to be granted.

The trial judge has said that in rendering his decision he was not influenced by the contents of the brief so filed. Such statement cannot be accepted as conclusive. *Peck* v. *Pierce*, 63 Conn. 310, 320. Though the only effect of reading the brief may have been to confirm the judge in the opinion which he had already formed, that opinion might have been changed had the plaintiff replied to the argument of the defendant's brief.

There is error and a new trial is granted.

In this opinion the other judges concurred.