THOMAS BOWLES v. W. W. GLASGOW.

(No. 331.)

SUBSTITUTING LOST PAPERS.— Order must be granted upon compe-
tent evidence, and no other issue can be litigated in such pro-
ceedings, not even of fraud in procuring the evidence.

CHARGE OF THE COURT.— Judge must not charge upon the weight
of evidence.

ERROR to Hill county.   Opinion by WATTS, J.

STATEMENT.— At the fall term, 1861, of the district court
of Hill county, Thomas Bowles recovered a judgment
against defendant in error, Glasgow, for $1,214.94.   The
record of the same was destroyed, and at the August term,
1868, substituted upon the motion of Bowles; defendant in
error resisted the motion on the ground that it had been
off and discharged June 20, 1863.   The court substituted the
judgment notwithstanding the plea.   The appellant caused
an execution to be issued on the substituted judgment Au-
gust 27, 1870.   The defendant in error, Glasgow, then in-
stituted this suit and procured a temporary injunction.   In
his petition he alleged that he had paid off and discharged
the said judgment June 20, 1863, and that he held the re-
ceipt of J. T. Ratcliff, the attorney of Thomas Bowles,
showing that fact; that the sheriff was proceeding to levy
upon his property, and unless restrained would sell the same,
to his great injury, etc.

This petition was filed September 3, 1870.   Thomas
Bowles answered February 25, 1871, that the matter of
payment had been adjudicated in the proceedings to sub-
stitute the judgment, and was therefore res adjudicata.
And further, that Glasgow had, by fraud and false repre-
sentations, induced Ratcliff to receive Confederate money
and give the receipt mentioned in the petition; that is, that
Glasgow represented to him, Ratcliff, that Bowles had
agreed to receive Confederate money in payment of said
judgment, and requested him to pay it to Ratcliff, which
was averred to be untrue.

The cause was finally tried October 24, 1873, and resulted in a verdict and judgment for defendant in error. The cause is now before the court on an assignment of errors that will be noticed in the opinion.

Opinion.— The proceeding to substitute the judgment was by motion, in accordance with articles 4969 and 4970, Paschal's Digest. The real and only issues that were or could have been tried under the motion were, did such judgment once exist? and is the same lost or destroyed? and is that presented by the applicant a copy, in substance, of the original judgment? Whenever the court is satisfied of these facts, from competent evidence, an order granting the substitution must necessarily follow. No issue of payment or even of fraud in procuring the original judgment, or any other extraneous matter, can or ought to be litigated in such proceeding. It was not a suit, but a motion, triable by the court without the interposition of a jury. Its object, purpose and effect were simply to substitute the record as it once existed; and this the party was entitled to, regardless of any invalidity in or defenses to such judgment. The law furnishes other and ample means of having such questions adjudicated.

If the plaintiff in error had followed up the plea of *res adjudicata* by introducing, upon the trial of this cause, as evidence, the record in the proceeding to substitute the judgment, which does not appear from the statement of facts, and it had shown such plea by defendant in error, it could not then be held to constitute such an adjudication upon the issue or fact of payment as would conclude him upon that issue.

It is objected that the court charged upon the weight of the evidence, wherein it gave them the rules of law to be applied in weighing the testimony of the witness Ratcliff. It appears from the record that the testimony of the witnesses Ratcliff and Glasgow was in direct conflict, and it may be implied that it had been insisted in argument

that, from the facts and circumstances in the case, it was shown that the witness, Ratcliff, had sworn falsely as to the material issue in the case. After charging the jury with respect to the rules of law to be applied in weighing the testimony of the witness, Booth, he further said in effect: That a witness might be discredited if it be shown that he had sworn falsely in the case, or made contradictory statements, under oath, upon material points, as well as by introducing witnesses who swear that his reputation for truth and veracity is bad. And if it appeared to them from all the circumstances proven that the witness, Ratcliff, had sworn falsely upon one or more material points, or that he had contradicted himself, that they should consider the same in determining the weight to be given to his evidence; that the legal effect of such false swearing would be to impair the credibility of the witness, but that they must determine the weight to be given to his evidence.

The statute is imperative; the judge must not charge upon the weight of the evidence; he is required to separate questions of law from questions of fact, and give alone to the jury the principles of law by which they are to be governed in the investigation of the matters of fact submitted to them.

In the case of Jones v. The State, 13 Tex., 168, it is held that, "in charging the jury, the judge may call their attention to the evidence of a particular fact or facts, if they be controverted, for the purpose of directing them to the rules of law that must govern them in arriving at the truth; and if they be uncontroverted, for the purpose of the application of law to them. All that is required of the judge is that he should neither decide on the facts, nor attempt to influence the jury in their decision on the facts."

In the case of Howard v. Colquhoun, 28 Tex., 134, the court below had charged the jury to "look to all the testimony and to the fact that some of the witnesses had been impeached, in order to decide whether or not they should believe those witnesses as to any facts that the defendants

are required to establish, and, if they believe them, how far." Smith, J., delivering the opinion of the court, said: "The language of the charge might have been couched in more appropriate terms, perhaps, but we are of opinion that the scope and meaning of the charge were, that their character had been attacked, and it was for the jury to judge of the weight their testimony was entitled to, and the jury must have so understood it."

In the case before us the judge does not tell the jury the witness, Ratcliff, had been impeached, nor does he therein assume any fact as proven. The effect of the charge was, that if the jury believed, from the evidence, that the witness had sworn falsely as to one or more material facts in the case, then the legal effect of such false swearing would be to impair the credibility of the witness. But they are also told that they must determine the weight to be given to his evidence. While the court might have couched the charge in this case in more appropriate language, still we are of the opinion that the jury fully comprehended and understood the charge as submitted to them as a question of fact, to be determined from the evidence, whether or not the witness had sworn falsely as to material facts, and if they so found that it would impair his credibility, but that they must determine the weight to be given to his evidence notwithstanding that they had found that he had sworn falsely. We are unable to see wherein this charge encroaches upon the province of the jury, or wherein it is obnoxious to the statute prohibiting the judge from charging upon the weight of the evidence. While we doubt the propriety of the judge's calling the attention of the jury to the testimony of any particular witness who may have testified in the case, still it does not follow that in doing so he has determined for them any fact, or even intimated what his conclusions are upon the facts. In the charge given the judge does not assume or intimate that the witness, Ratcliff, had sworn falsely, but leaves them free and untrammeled

.to determine that question for themselves. Nor does he charge them that in the event they find that he had sworn falsely, that then he was unworthy of belief, but they are required for themselves to determine what weight his testimony was entitled to. The court tells the jury that the legal effect of false swearing is to impair the credibility of the witness; this is true; else if such was not the effect, testimony would not be admissible to establish the false swearing. The court does not tell them to what extent it impairs the credibility of the witness; here again they are required to determine for themselves what weight is to be given to his testimony. This objection, in our opinion, is not well taken.

Upon the trial the witness Booth, over the objection of plaintiff in error, testified that he heard Thomas Bowles, during his life, tell defendant in error that he would accept Confederate money in payment of the judgment, and to bring the money to town on a certain day and meet him at Ratcliff's office, and if he (Bowles) was not there to pay the money to Ratcliff; that he was authorized to receive it. Upon what ground the objection is based we are not informed by the record. This evidence was material, and directed to the vital issue in the case, and we fail to conceive any view of the case in which this evidence would not be admissible.

It is claimed that the court erred in overruling the motion for a new trial because of the newly-discovered evidence shown therein. The evidence set forth and shown by the motion was but cumulative, and not a sufficient ground to warrant a new trial. Madden v. Shephard, 8 Tex., 49; Kilgore v. Jordan, 17 Tex., 346; Hilliard on New Trials, 380.

The motion fails to disclose facts sufficient to show that the party had used due diligence to ascertain and avail himself of this testimony on the trial of the case below. The nature of the evidence, and the position and evidence

of the witnesses by whom it was proposed to be made, rather contradicted the idea that diligence had been used to discover the same and make it available on the trial.

The witness Booth was introduced and examined as such by the defendant in error, as appears from the statement of facts in rebuttal. The plaintiff in error introduced five witnesses, who being examined testified that they knew the witness Booth's general reputation for truth and veracity in the neighborhood in which he lived, and that it was bad.

The defendant then introduced nine witnesses who testified that Booth's reputation for truth and veracity was good. The plaintiff in error proposed to call other witnesses on that question, and defendant in error replied that he had other witnesses to sustain Booth's testimony that he would also introduce, whereupon the court refused to allow any other witnesses to be examined upon that question. This refusal of the court to permit a protracted investigation of this collateral issue is claimed to be erroneous.

It is an elementary principle that the court has a discretionary power to limit the examination and cross-examination of witnesses as to material issues, as well as to shape the order in which the evidence is to be produced. Wharton's Law of Evidence, vol. 1, sec. 505. It was held in Bunnell v. Butler, 23 Conn., 65, that the court might exercise its discretion in limiting the number of impeaching witnesses, and likewise the supporting witnesses, and that a proper exercise of such discretion is not good ground for reversal. Johnson v. Brown, 51 Tex., 76. In this case both parties introduced witnesses upon this issue, and then each proposed to protract the examination by introducing other witnesses upon the same issue. Necessarily the judge must have the right to exercise his discretion in such cases, or otherwise the investigation would be interminable.

The record does not disclose such an abuse of discretion in this respect as would authorize or require a reversal of the judgment.

AFFIRMED.