The parties have been married to each other for about forty-one years, during which they have raised a family of five children, and during most of the time they have lived together and have worked together in operating a retail food market. By dint of their joint labors and frugal habits, they accumulated sufficient money to invest in real estate and to provide comforts as well as the necessaries of life for themselves and their offspring. Within the last fifteen months, troubles have arisen which resulted in this and other litigation between them.
By this action, Mrs. Marino seeks to recover $1600 which she claims to have loaned her husband in 1942 and 1944. The defendant claims that there was no loan made to him.
In 1936, Mr. Marino negotiated for the purchase of a piece of real estate. By his direction, title was taken in Mrs. Marino's name, although the purchase price came from the family funds. The building on the premises was converted into a house in 1937 out of moneys taken from the business or raised on mortgages to the Farmers and Mechanics Bank. Payments were made from time to time, but further borrowings increased the mortgage from time to time, so that on August 4, 1942, the amount secured was $2250.
In the meantime, Mr. Marino had taken title to a property adjoining that owned by Mrs. Marino. In 1942, a mortgage of $3000 on his property prevented further borrowing thereon, and, as he was desirous of remodeling his house, Mrs. Marino, on August 4, 1942, borrowed $1000 on her place (which was occupied in part as the family home), thereby increasing her mortgage to $3250. The net proceeds of this additional borrowing, or $967.37, was turned over to Mr. Marino and used by him in fixing up his house. Mrs. Marino's mortgage has been paid in full, the final payment of $725 having been made on December 4, 1944. Mr. Marino completed payment of his mortgage in May, 1945.
During the few years immediately prior to April, 1945, the business was very profitable, and much of the money used to pay the bank borrowings and for improvements of the two houses came from this source. Besides, the children turned most *Page 154 
of their net earnings into the common family fund, which was managed by Mrs. Marino, as was the income from the rents from the two houses. Likewise, money came from allotments made by the boys who were in military service. All of these moneys were commingled by Mrs. Marino and disbursed by her, although the bank payments were usually delivered by Mr. Marino, to whom the money was handed by his wife. Their informal and friendly relationship continued until Mr. Marino left home and went to California on April 3, 1945, and this action was instituted about two weeks later. Mrs. Marino, likewise, went to California in the spring of 1945. She lived with her husband there for about a month; he returned to Middle town, Connecticut, and again went to California for a short time. Mrs. Marino returned home in October, 1945.
It is the insistent contention of Mrs. Marino that she is entitled to recover the sum advanced to her husband and expended by him for the alterations to his house. In her complaint she alleges a "promise" to repay this sum and her testimony is to the effect that at the time she advanced the money "he promised to give it back." She states further that when she later asked for payment, in 1943, he paid no attention to her demand. She has not sustained the burden of proving an express promise to pay the sum mentioned, for her advancements as late as 1944 negative any expectation of payment of the earlier sum.
Looking at the case on the theory of a possible implied promise to pay, she must also be denied a recovery, because of the relationship between the two parties and the course of their dealings in financial matters during so many years. Where valuable services are rendered or moneys advanced from one stranger to another, there is strong basis for an inference or implication that the debt is to be paid. Bartlett v. Raidart,107 Conn. 691. But the situation is different where the parties are members of one family living in one household. Cotter
v. Cotter, 82 Conn. 331, 332; Burke v. Burke, 92 Conn. 306,308; Davis v. Davis, 128 Conn. 243, 247. Applying these principles to the facts shown here, no promise to pay is to be implied or inferred. Likewise, there is no foundation of an obligation based on quasi contract.
Another claim of Mrs. Marino is that she gave her husband about $300 in coin during December, 1944, on a loan. Mr. Marino denies this, claiming that the "change" was money *Page 155 
from the store which she told him to take to the bank. Whether the latter version of the transaction is correct or not, Mrs. Marino's testimony falls far short of showing that the money was turned over on any promise to repay by her husband or any expectation of repayment on her part.
The other claim is that there was another loan of $300 made in December, 1944, by way of payment on the mortgage on Mr. Marino's house. It is admitted by both parties that Mrs. Marino handed $300 to one of her daughters to make the payment on the mortgage, and that the payment was made. Mr. Marino says that he did not know of this until later, but whether this is the fact or not there is no basis for finding an express or implied promise to reimburse the plaintiff for this item.
By way of counterclaim, Mr. Marino seeks to recover sums which, he claims, were expended for the benefit of Mrs. Marino. These sums came from the same source as those given to Mr. Marino, and he does not now press for judgment on these items. Nor does he now press for a recovery for his claimed share of the proceeds from the sale of articles of personal property sold when Mrs. Marino disposed of the business fixtures, etc.
 The issues on the complaint are found in favor of the defendant; the issues on the counterclaim are found in favor of the plaintiff; judgment to be entered accordingly.